LEAVITT LEGAL SERVICES, P.C.
JAMES T. LEAVITT, ESQ.
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittecf@gmail.com
Attorney for Debtor-in-Possession

E-Filed on: 9/15/22

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

LAS VEGAS SKYDIVING ADVENTURES, LLC.

DEBTOR.

BK-22-13307-nmc

CHAPTER 11

**OMNIBUS DECLARATION OF SAMMY VASSILEV IN SUPPORT OF EMERGENCY FIRST DAY MOTIONS AND RELATED RELIEF**

I, SAMMY VASSILEV, being duly sworn, hereby depose and declare under penalty of perjury:

1. I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so. I make this Declaration in support of the initial emergency motions requesting various types of immediate relief (collectively, the "Initial Motions") filed by Las Vegas Skydiving Adventures, LLC., (as applicable, "Las Vegas Skydiving" or the "Debtor"), in its chapter 11 bankruptcy case (the "Chapter 11 Case"), as well as such other relief as may be requested hereinafter during the case. On September 14, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-referenced Chapter 11 Case. On its bankruptcy petition, the Debtor elected to proceed under subchapter V of chapter 11.

2. My wife and I are the Debtor's officers, directors, and owners. Based upon my position and experience with the Debtor, I am readily familiar with its businesses and financial affairs. All facts set forth in this Declaration are based upon my own personal knowledge, or information learned from my review of relevant documents maintained in the ordinary course of the Debtor's business and which are business records, and in consultation with the company's legal and other advisors. If called upon to testify as to the contents of this Declaration, I would do so as set forth herein.

3. This Declaration provides the Court with some background information regarding the Debtor, as well as the context for various emergency relief requested in its Chapter 11 Case. Accordingly, this Declaration is organized into two parts: first, a brief overview of the Debtor's businesses and the events leading to its Chapter 11 Case, and second, an explanation of the relief sought in the Debtor's Initial Motions.1 The relief sought in the Initial Motions is critical to the Debtor's operations, will allow for a smooth transition into chapter 11, and will maximize its chances for success in its reorganization, and thus also the ultimate distributions to creditors.

## I. BACKGROUND

**A. The Debtor's Businesses.**

4. Las Vegas Skydiving is a Nevada corporation that was formed on January 10, 2014, and I with my wife Ivelina Vassilev are its owners, officers and directors.

5. On January 10, 2014, Ivelina and Sammy Vasseliv incorporated Las Vegas Skydiving Adventures LLC. The Debtor entered into an operating permit at a leased property commonly known as 1100 Airport Rd., Overton, Nevada 89040 on or about May 1st, 2016.

6. For 2021, Debtor had a total net income of $8,681.98 and are currently in the process of completing book keeping for the year to provide updated profit & loss statements for this year. I believe the future prospects of its Business are very good but we will know better once our book keeping for 2022 is complete.

**B. Litigation and Default Judgment.**

7. On December 10th, 2018 the company a Federal lawsuit (2:18-cv-02342-APG-VCF) against Groupon, Inc. based upon anti-competitive commercial activity under 15 U.S.C. Sec. 2, direct service mark infringement under 15 U.S.C. Sec. 1114 and other various related causes of action (Hereinafter "Fed. Suit").

8. After nearly 4 years of litigation, the court found in favor of Groupon, Inc. On July 11, 2022, the court granted a motion by Groupon, Inc. for an award of attorney's fees in the amount of $325,000 to be paid by the Debtor.

9. The Debtor is currently the process of filing an appeal on the underlying verdict, but was unable to come up with funds to pay a bond in order to stay execution of the attorney fees award.

10. A writ of Execution in favor of Groupon, Inc. was filed on September 1st, 2022, necessitating the current bankruptcy filing.

## II. INITIAL MOTIONS

**A. Introduction.**

11. The Debtor's transition into Chapter 11 must be effectively organized to ensure that it will be able to operate smoothly in bankruptcy and afforded the opportunity to emerge successfully from this Chapter 11 Case. Accordingly, it is critical that the Debtor maintain its Businesses, and minimize the distractions to its operations that could result from petitioning for Chapter 11 relief.

12. I have reviewed and am generally familiar with the contents of each of the Initial Motions as hereinafter described. With the assistance of the legal explanations provided to me by my legal counsel, the relief sought in each of the Initial Motions is necessary to enable the Debtor to operate in its Chapter 11 Case with minimal disruption and loss of value, and further

must be approved on an emergency basis in order to avoid immediate and irreparable harm to the Debtor's Businesses.

**B. Designation of Responsible Person.**

13. I with my wife have been the Debtor's owners and officers since the company was formed in 2014, and work at its Business on a daily basis. Accordingly, I am readily familiar with the Debtor's finances and operations. Additionally, the Debtor's corporate resolution authorizing it to file bankruptcy attached to its *Voluntary Petition* [ECF No. 1] appointed me as the Debtor's designated responsible person in this Chapter 11 Case, and this Motion seeks to implement the foregoing. Accordingly, I am suitable for serving as a designated responsible person for the Debtor's in its Chapter 11 Case, and my service as such is necessary and appropriate.

**C.    Money Management.**

14. To manage its business efficiently and seamlessly, the Debtor utilizes a money management system (the "Money Management System") to collect and transfer funds generated by its operations and disburse those funds to satisfy the obligations required to operate its business. The Debtor proposes to maintain control over the administration of its Bank Accounts and at the Bank indicated herein.

15. In the ordinary course of business prior to the Petition Date, the Debtor used the Money Management System, which is similar to those utilized by other companies, to collect, transfer, and distribute funds generated by Debtor's business operations efficiently. In the ordinary course of business, the Debtor accurately recorded such collections, transfers, and disbursements as they were made. Currently, Debtor has two (2) merchant account through which payments made through credit card companies are processed.

30. Given the existing Money Management System and the confusion and inefficiency that would be caused by trying to change it, the Debtor has determined to continue its prepetition

cash management practices in the post-petition period to a large extent. The Debtor's Cash Management System constitutes ordinary course, essential business practices providing significant benefits to Debtor including, *inter alia*, the ability to (i) control corporate funds, (ii) ensure the availability of funds when necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Any disruption of the Money Management System could have a severe and adverse impact upon Debtor's value and reorganization effort.

16. The Debtor will maintain its books and records relating to the Money Management System to the same extent the books and records were maintained before the Petition Date. In this way, all transfers and transactions will be properly documented, and accurate balances will be maintained. As a result, the Debtor will be able to accurately document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest. Based on the foregoing, the Debtor believes that maintenance of the existing Cash Management System is in the best interests of its estate, and all creditors and parties in interest. Therefore, the Debtor seeks authority to maintain and use its Cash Management System during its Chapter 11 Case.

17. By preserving business continuity and avoiding disruption and delay to the Debtor's disbursement obligations, including payroll, that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors, and customers, will be best-served. The confusion that would otherwise result, absent the relief requested herein, would ill-serve Debtor's rehabilitative efforts.

36. Accordingly, the Debtor requests authority to maintain the Bank Accounts in the ordinary course of business, to continue utilizing the Money Management System to manage money in a manner consistent with prepetition practices, and to pay any ordinary course bank

fees that may be incurred in connection with the Bank Accounts or any other new bank account that may be opened pursuant to an order of this Court following the Petition Date.

18. If the Debtor is not permitted to maintain and utilize its current Bank Accounts and its existing check stock, the resultant prejudice will include significant (i) disruption to the Debtor's ordinary financial affairs and business operations, (ii) delay in the administration of Debtor's estate, and (iii) cost to the estate to set up new systems, open new accounts, print new business forms, and print new checks.

**D. Utilities.**

19. In the ordinary course of operating the Debtor's Businesses, the Debtor incurs utility expenses (within the meaning of section 366 of the Bankruptcy Code) for electricity (OVD5), internet (Moapa Valley Telephone), and phones (Verizon), (collectively, the "Utility Providers").

20. On average, the Debtor's Businesses expend approximately $650.00 in the aggregate and on average each month on utility costs. As of the Petition Date, the Debtor is current on all of its utility obligations owed to its utility providers, except for current accrued amounts that have not been billed as of yet in the middle of the applicable billing cycle.

21. Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and, therefore, to the success of its reorganization. Any interruption of utility services, even for a brief period of time, would disrupt the Debtor's ability to continue maintaining its Businesses, thereby negatively affecting customer relationships, revenues and profits. Such a result could jeopardize the Debtor's reorganization efforts and, ultimately, value and creditor recoveries. It is therefore critical that utility services continue uninterrupted during the Chapter 11 Case.

22. The Debtor intends to pay its post-petition utility obligations owed to the Utility Providers in a timely manner and keep them current on a go forward basis from and after the

Petition Date. The Debtor expects that it will have access to such funds from operations to pay post-petition obligations to the Utility Providers. Given the relatively minor monthly obligations usually owing to Utility Providers as compared with the Debtor's cash flow generated from operations, and the long account history spanning several years without issues, the Debtor asserts that there is no need to provide any additional assurance of payment for future services to the Utility Providers.

23. The proposed Procedures are necessary for the Debtor to carry out its reorganization efforts. If such Procedures are not approved, the Debtor could be forced to address a volume of requests by its Utility Providers during the critical first weeks of its reorganization. Moreover, the Debtor could be blindsided by a Utility Provider unilaterally deciding -- on or after the 30th day following the Petition Date -- that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service would force operations to cease, and such disruption of operations could place the Debtor's reorganization efforts in jeopardy.

24. The relief requested herein is in the best interests of the Debtor's estate, as it will have little economic impact on Debtor's creditors, will allow the Debtor to generate additional revenue that would not otherwise be available, while also preserving for the creditors invaluable customer goodwill. It is necessary that this Court grant the relief requested herein to facilitate continued operation of Debtor's business. The importance of Debtor's customer loyalty to continue booking business is absolutely critical to the reorganization.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED: September 14, 2022

/s/ _____
SAMMY VASSILEV